## Case No. 15,850a.

UNITED STATES v. MYNDERSE et al.

[12 Int. Rev. Rec. 94.]

Circuit Court, N. D. New York. June Term, 1870.[1]

INTERNAL REVENUE — BONDS — NON-COMPLIANCE WITH STATUTORY REQUIREMENTS—VALIDITY — DISTILLER'S BOND.

[1. A bond in favor of the United States, which is extorted by a public officer under color of his office, but which contains conditions different from those prescribed by statute, is void.]

[2. Where a bond running to the United States and procured by a public officer is sued upon, and it is not alleged in the pleadings that it was illegally exacted or obtained by such officer under color of his office, the same will be presumed to have been given voluntarily.]

[3. Where a bond voluntarily given for the benefit of the United States contains obligations in excess of the requirements of the statute under which it is obtained, it may be valid to the extent of the obligations which are directed to be taken by the statute, and void as to the excess, provided that the excessive conditions are separable from the others. If they are not separable, the whole bond is void.]

[Cited in U. S. v. Humason, Case No. 15,421.]

[4. A distiller's bond given under the 39th section of the internal revenue law of July 1, 1862, and which contained obligations and conditions not required by that section, held void in toto, though voluntarily given, it appearing that the obligations in excess of the statutory requirement were not separable from those which were in accordance with the statutory provisions.]

HALL, District Judge. This case was argued before me alone in March, 1869, and in the ensuing vacation I prepared the annexed opinion sustaining the demurrer. Before the term at which judgment could be entered in accordance with that opinion I determined to order a re-argument of the case. The order for a re-argument was made at the October term, and the case was accordingly re-argued at the last March term. Being still of the opinion that the main question presented has been settled by repeated adjudications, and that until such adjudications shall be overruled by higher authority they should be followed in this

court. the annexed opinion is adopted as my opinion upon the re-argument.

This was an action of debt. upon a bond executed by the defendants and one Jane Goodwin. The declaration was in the following words:

"The United States of America, plaintiffs in this suit, by William Dorsheimer, their attorney, complain of Jane Goodwin, Edward Mynderse, and Charles D. Mynderse, defendants herein, being in custody, etc., of a plea that they render to the said plaintiffs the sum of $18,000 which to them they owe, and from them they unjustly detain. For that the said defendants heretofore, to wit, on or about the 23d day of February, A. D. 1863, by their certain writing obligatory, sealed with their seals, and now shown to this court, acknowledged themselves to be held and firmly bound unto these plaintiffs, under the name of the United States of America, in the sum of $18,000, to be paid by the said defendants to these plaintiffs. Which said writing obligatory was and is subject to certain conditions thereunder written, whereby, after reciting that the said defendant Jane Goodwin had made application to the collector of internal revenue for the Twenty-Fifth collection district of the state of New York, for a license as distiller at the distillery situated in the town of Torrey, in the county of Yates, and state of New York, it was conditioned that if the said defendant Jane Goodwin should truly and faithfully conform to all the provisions of an act entitled 'An act to provide internal revenue to support the government and pay interest on the public debt,' approved July 1, 1862 [12 Stat. 432], and of such other act or acts as were then or might thereafter be in that behalf enacted, then the said obligation to be void and of no effect, otherwise it should abide and remain in full force and virtue. And the said plaintiffs further allege that although the said defendant Jane Goodwin continued to be and was distiller of spirits and spirituous liquors and the owner and possessor of a distillery situated in said town of Torrey, with certain stills, boilers, and other vessels used for the purpose of distilling spirits and spirituous liquors, from and including the 1st day of March, A. D. 1863. to and including the 5th day of May. 1864, yet the said defendant Jane Goodwin did not during that time or any part thereof truly and faithfully conform to all the provisions of the said act of congress, entitled 'An act to provide internal revenue to support the government and to pay interest on the public debt,' approved July 1, 1862, and of such other act or acts as were thereafter in that behalf enacted. And for a further breach of the said obligation the said plaintiffs allege that the said defendant Jane Goodwin. at the town of Torrey aforesaid. in the said Twenty-Fifth collection district of New York, from and including the month of March, A. D. 1863,

to and including the 5th day of May; A. D. 1864, was and continued during all that time to be a distiller of spirits and spirituous liquors as aforesaid. and was the owner of certain stills. boilers, and other vessels used and intended to be used for the purpose of distilling spirituous liquors, and had such stills, boilers, and other vessels under her superintendence on her own account, and used and intended to use such stills, boilers, and other vessels for the purpose of distilling spirituous liquors as the owner thereof, and neglected and refused, from day to day, to make true and exact entry, or cause to be entered in a book kept by her for that purpose, of the number of gallons of spirituous liquors distilled by her, and also of the number of gallons thereof sold or removed for consumption or for sale, and the proof thereof. and neglected and refused to keep such book always open in the day-time, Sundays excepted, for the inspection of said collector, and neglected and refused to allow such collector to take any minutes, memorandums or transcripts thereof, and neglected and refused to render to the said collector on the 1st, 10th, and 20th days of each and every month in each year, or within five days thereafter. or at any time, a general account in writing taken from her books of the number of gallons of spirituous liquors distilled and sold, or removed for consumption or sale, and of the proof thereof, for the period or fractional part of a month preceding said day, or for such portion thereof as may have elapsed from the date of said entry and report to the said day which next ensued, and neglected and refused to keep a book or books in form duly prescribed by the commissioner of internal revenue, and which form had theretofore been duly prescribed by him, wherein was entered from day to day the quantities of grain, or other vegetable productions. or other substances, put into the mash tub for the purpose of producing spirits, and neglected and refused to keep such book or books open at all reasonable hours for inspection by the assessor and collector of the said district, and neglected to verify or cause to be verified the said entries, reports, books. and general accounts, by oath or affirmation, taken before the said collector or some other officer authorized by the laws of the state to administer the same according to the forms required by law, and neglected and refused to pay to the said collector the duties on spirituous liquors so distilled and sold, or removed for consumption or sale, and in said accounts mentioned at the time of rendering an account thereof, or when such account should have been rendered; and neglected and refused to do any and every of the things by law required to be done by her as duly required by the 45th section and against the 45th section of the act of congress. approved July 1. 1862 [12 Stat. 432], entitled 'An act to provide internal revenue

to support the government, and to pay interest on the public debt,' and the several amendments thereof.

"And these plaintiffs, for a further breach of the condition of the said writing obligatory, allege that the said defendant Jane Goodwin was and continued to be a distiller of spirits and spirituous liquors at the said town of Torrey, in said Twenty-Fifth collection district of New York, from the first day of March, A. D. 1863, to and including the fifth day of May, A. D. 1864, and during that time at Torrey aforesaid made, manufactured, and distilled and sold, and removed for consumption and sale, a large amount of spirits and spirituous liquors, liable to duty and tax under the act of congress before mentioned and the various acts amendatory thereof to wit, 487,756 56-100 gallons of spirits and spirituous liquors, upon which there was due and owing to the said plaintiffs for duties and taxes under and pursuant to the said several acts of congress, the sum of $122,744 82-100, from the said Jane Goodwin, and which said duties and taxes the said defendant Jane Goodwin of right and law and under the provisions of the said act of congress hereinbefore mentioned, should have and was required to pay on the spirits and spirituous liquors made and distilled and sold, and removed for consumption and sale, by her on the 1st, 10th and 20th days of each month during said time, or within five days thereafter, to the collector of said district, upon the amount of spirits and spirituous liquors so made, distilled, and sold, and removed for consumption and sale by her during such periods or parts of such month respectively. Yet the said defendant Jane Goodwin did not make and render true account and reports thereof, or pay the duties and taxes due thereon to the collector for the said Twenty-Fifth collection district on the 1st, 10th and 20th days of each month or within five days thereafter during said time, nor did she pay or cause to be paid to the collector for said district the duties and taxes upon the said spirits and spirituous liquors made and distilled and sold and removed for consumption and sale as aforesaid during said period from March 1, 1863, to May 3, 1864, as of right and law according to the condition of the said bond she should have done; but on the contrary thereof the said defendant Jane Goodwin, of the said spirits and spirituous liquors so as aforesaid made, distilled, sold, and removed for consumption at Torrey aforesaid, during the period between March 1, 1863, and May 5, 1864, aforesaid, has at various times during that time returned to and paid the tax and duties due and owing as aforesaid to the collector for the said Twenty-Fifth district only upon 435,099 85-100 gallons thereof and no more, to wit, the sum of $107,708.76, and no more, and has hitherto fraudulently neglected and refused to return and pay the taxes upon 54,656 51-100 gallons of spirits and spirituous liquors so as aforesaid by her during said time between March 1, 1863, and May 5, 1864, at Torrey aforesaid, made and distilled and removed for consumption and sale, upon which there was due and owing from her to these plaintiffs for such duties and taxes under the acts of congress aforesaid the sum of $15,066.05, contrary to the condition of the said written obligations hereinbefore firstly set forth. Whereby an action hath accrued to these plaintiffs to demand, and have of and from the said defendants, the said sum of $18,000, the sum above demanded. Yet the said defendants, although often requested so to do, have not paid to the said plaintiffs the said sum of $18,000, or any part thereof, but to pay the same or any part thereof have hitherto wholly neglected and refused, and still do neglect and refuse, to the damage of the said plaintiffs of $18,000, and therefore they bring suit," etc.

After an imparlance, it was suggested upon the record, and admitted by the plaintiffs, that the defendant Jane Goodwin had died since the last continuance; and thereupon it was ordered that no further proceedings should be had against the said Jane Goodwin. The other defendants filed a general demurrer to the declaration. The plaintiffs joined in demurrer and the questions thus presented were brought before the court at the last term.

Mr. Cogswell, for defendants, made the following points:

1. The bond in question, being purely a statutory bond, given by virtue of a statute specially providing for the condition thereof, and not conforming in any respect to such statutory condition, is void.

2. The declaration is bad for not alleging the delivery of the bond; or, if it can be regarded as alleging the same argumentatively, for not alleging the circumstances under which it was executed.

3. The declaration is bad because it alleges several breaches in one count.

4. The second and third objections may be urged, although not specially assigned as cause of demurrer.

In support of these points, the counsel for the defendants cited the following authorities: U. S. v. Morgan [Case No. 15,809]; Dixon v. U. S. [Id. 3,934]; U. S. v. Gordon [Id. 15,232]; U. S. v. —— [Id. 14,413]; Chit. Pl. 295; and he insisted in his written brief, that this is not the case of a bond taken by the proper authorities for the proper discharge of official duties, where the condition of the bond is not specially directed, or where the bond departs in some particulars from the condition prescribed, and that the cases cited by him, as above stated, were not affected by the cases of U. S. v. Tingey, 5 Pet. [30 U. S.] 114; U. S. v. Bradley, 10 Pet. [35 U. S.] 343; and U. S. v. Linn, 15 Pet. [40 U. S.] 290.

William Dorsheimer, U. S. Atty., made the following points:

1. The bond is sufficient. It is conditioned that the principal shall faithfully conform to all the provisions of the law referring to it, and such a condition is sufficient. So, surplusage will not vitiate a bond.

2. The case of U. S. v. Bradley, 10 Pet. [35 U. S.] 343, lays down a rule broad enough to cover this case.

In addition to the case of U. S. v. Bradley, the attorney of the United States, under his first point, cited the case of U. S. v. Maurice [Case No. 15,747], and upon the argument he relied in part upon the three cases referred to by the defendants' counsel as above stated.

HALL, District Judge. The second, third, and fourth points made by the defendants' counsel cannot be maintained. The assignment of several breaches in the same count may perhaps be a valid objection when made by a special demurrer, but the defect is one of form merely, and the objection can be made available only when it is specially assigned as cause of demurrer. Indeed, these three points were abandoned at the hearing, the defendants' counsel expressly waiving all merely formal objections to the declaration.

The first point presents a very serious question, and in the present state of the pleadings one quite difficult of determination. It will be observed that in the recital contained in the condition of the bond declared on it is set forth that Jane Goodwin, the principal in the bond, had made application to the collector of internal revenue for the Twenty-Fifth collection district of the state of New York for a license as a distiller; but it is not stated that such bond was required as a condition precedent to the granting of such license; nor is there in the condition of the bond, or in any part of the declaration, any statement that such bond was given in order to procure such license; or that such license was ever issued to the applicant. Indeed, the circumstances under which the bond was executed and delivered do not appear upon the record, in the form of a special plea or otherwise; and from this state of the pleadings arises one of the most embarrassing questions in the case. The law in force at the time this bond is alleged to have been made required the execution of a bond before the issuing of a license to a distiller. It also expressly prescribed in explicit and unequivocal language the precise conditions of such bond; and thus clearly defined and limited the extent of the liability to be imposed upon the distiller and his sureties. The provisions of this law are contained in the 39th section of the internal revenue act of July 1, 1862, which is as follows: "Sec. 39. And be it further enacted, that it shall be the duty of the collectors within their respective districts to grant licenses for distilling, which license shall contain the date thereof, the sum paid, and the time when the same will expire, and shall be granted to any person, being a resident of the United States, who shall desire the same, by application in writing to such collector upon payment of the sum or duty payable by this act upon each license requested. And at the time of applying for said license, and before the same is issued, the person so applying shall give bond to the United States in such sum as shall be required by the collector, and with one or more sureties, to be approved by said collector, conditioned that in case any additional still or stills, or other implements to be used as aforesaid, shall be erected by him, his agent or superintendent, he will, before using or causing or permitting the same to be used, report in writing to the said collector the capacity thereof, and information from time to time of any change in the form, capacity, ownership, agency, or superintendence which all or either of the said stills or other implements may undergo, and that he will from day to day enter or cause to be entered in a book kept for that purpose the number of gallons of spirits that may be distilled by said still or stills or other implements, and also of the quantities of grain or other vegetable productions or other substances put into the mash tub, or otherwise used by him, his agent, or superintendent, for the purpose of producing spirits, which said book shall be opened at all times during the day (Sundays excepted) to the inspection of the said collector, who may make any memorandums or transcripts therefrom; and that he will render to the said collector on the 1st, 10th, and 20th days of each and every month, or within five days thereafter, during the continuance of said license, an exact account in writing taken from his books of the number of gallons of spirits distilled and sold, or removed for consumption or sale by him, his agent, or superintendent, and the proof thereof, and also of the quantities of grain or other vegetable productions or other substances put into the mash tub, or otherwise used by him, his agent, or superintendent, for the purpose of producing spirits, for the period or fractional part of a month then next preceding the date of said report, which said report shall be verified by this act; and that he will not sell or permit to be sold or remove for consumption or sale any spirits distilled by him under and by virtue of his said license until the same shall have been inspected, gauged, and proved, and the quantity thereof duly entered upon his books as aforesaid; and that he will at the time of rendering said account, pay to the said collector the duties which by this act are imposed on the spirits so distilled; and the said bond may be renewed or changed from time to time, in regard to the amount and sureties thereof, according to the discretion of the collector." Upon the argument it was assumed that the bond declared upon was given in order to obtain the license provided for in this section, and it was conceded to be in the form prescribed for the bond of a distiller by

the commissioner of internal revenue. It was insisted by the defendants that the bond was void, because its condition was entirely different from that prescribed by law, and imposed upon the obligors a liability not only different from but much more burdensome than that authorized to be imposed by the act of congress under which it was taken. On the part of the United States it was urged that the bond, even though void in respect to that portion of the condition which required the defendant Jane Goodwin to conform to the provisions of acts of congress other than those relating to a distiller contained in the act of July 1, 1862, under which it was taken, was nevertheless good to the extent of the obligation authorized to be required under the provisions of such act. It was also insisted upon the authority of the case of U. S. v. Maurice [supra] that the reference to the provisions of the law contained in the condition of the defendants' bond was, in legal effect, the same as though such provisions had been contained within the condition itself; that surplusage did not vitiate; that so much of the condition as was not authorized by the statute should be rejected as surplusage; and that the bond should be enforced to the extent of the liability authorized to be imposed upon a distiller and his sureties, at the date of the execution of the bond.

Although the principles and effect of the cases cited by the defendants' counsel were somewhat discussed at the hearing, the question whether, under the pleadings in this case, the bond declared on should be considered as one voluntarily given or as a statutory bond, exacted by the collector colore officii, as the condition of issuing a license to Jane Goodwin, as a distiller, was not argued; although it is believed to be an important question upon the present demurrer. This will sufficiently appear upon a careful consideration of the cases which will be presently referred to. If the bond in this case is to be considered as a bond exacted from the distiller and her sureties as a condition precedent to the issuing of the ordinary distiller's license, it must necessarily be declared void. The officer by whom and the occasion on which a distiller's bond, with sureties, might be required, and the precise conditions which it should contain, are all prescribed by statutes, and the rule of law applicable to such statutory bonds is well settled. In the case of Hawes v. Marchant [Case No. 6,240]. this rule was stated by Mr. Justice Curtis with the clearness and accuracy which characterize all the opinions of that distinguished jurist. In that case he said: "It is to be governed by the laws applicable to such obligations, among which is the rule that if a public officer, authorized to take a bond, has illegally exerted his official authority, and thereby compelled the obligee to 'enter into an obligation not required by law, it is not binding. This rule is settled by the highest authority. In U. S. v. Tingey, 5 Pet. [30 U. S.] 115, the defendant, who was a surety

of a purser in the navy in a joint and several bond, pleaded that the condition of the bond differed substantially from the requirement of the act of congress, and that the same was extorted from the purser and his sureties as the condition of his retaining his office. The court held the plea good. In conformity with this are a great number of decisions, some of which are U. S. v. Gordon, 7 Cranch [11 U. S.] 287; U. S. v. —— [Case No. 14,413]; U. S. v. Gordon [Id. 15,232]; U. S. v. Morgan, [Id. 15,809]; Beacom v. Holmes, 13 Serg. & R. 190; Purple v. Purple, 5 Pick. 26. And the cases in which it has been held that if the condition of a statutory bond contains stipulations which are not required by the statute, but separable from those which are required, the latter may be enforced and the former rejected, silently, at least, acknowledge the same rule, by requiring that one should be separable from the other, and by denying all efficacy to those provisions which have been inserted without warrant of law. Among the latter class of cases are U. S. v. Bradley, 10 Pet. [35 U. S.] 343; U. S. v. Linn, 15 Pet. [40 U. S.] 315; Hall v. Cushing, 9 Pick. 395; Van Deusen v. Hayward, 17 Wend. 67; Ring v. Gibbs, 26 Wend. 502; Shunk v. Miller, 5 Barr [5 Pa. St.] 250. The rule which avoids such bonds rests upon the want of authority in the public officer to take them, and upon the policy of guarding the citizen against oppression by the illegal exercise of official power. It is well stated by Sewall, J., in Churchill v. Perkins, 5 Mass. 541, that where the plaintiff demands the fruit of an obligation obtained colore officii, it must be shown that the demand is justified by some authority of the office, otherwise it is against sound policy, and is void by the principles of the common law. By 'colore officii,' however, must be understood some illegal exertion of authority, whereby an obligation is extorted which the statute does not require to be given. If all parties voluntarily consent to enter into the bond, and the departure from the precise requisitions of the statute is made by mistake, or accident, and without any design to compel the obligees to enter into an undertaking not required by law, the bond is not invalid simply because it contains something which the statute does not authorize. U. S. v. Bradley, 10 Pet. [35 U. S.] 364; U. S. v. Linn, 15 Pet. [40 U. S.] 290. Whether it can be enforced or not depends upon the possibility of separating the part of the condition authorized and required from the residue of the condition, where the condition is not wholly in conformity with the law; and that is the only objection to the bond." Under what circumstances of compulsion or constraint a bond or other obligation shall be considered as extorted or exacted without legal right or authority, and therefore void, or as voluntarily given, and therefore valid, is sometimes a question of much difficulty, and in respect to which, as in respect to the question of what shall be regarded a voluntary

payment. there has not been an entire unanimity of opinion. Apparently conflicting decisions upon these questions have been made in different states. The decisions of the courts of the United States have not, perhaps. been entirely uniform, but it is believed that it may be properly assumed upon the authority of those decisions that a bond not given by the obligor of his own free will, but illegally exacted by a public officer, as a statutory bond and as a condition precedent to the exercise of any legal right, is void. A careful review of the authorities bearing upon this question, or upon other questions arising in this case, will not be attempted, but several cases which it is supposed may have an important bearing upon some of those questions will be referred to, and a brief statement of some of the points decided will be made. It will perhaps be useful to consider most of these cases in chronological order:

In 1808, in U. S. v. Hipkin [Case No. 15,-371] in the district court of the United States. at Norfolk, Va., it was insisted that a bond given for the enrolment of a vessel was void because its condition was not authorized by, but was contrary to, the express provisions of the law which required a bond on such enrolment, and also because it was hostile to the genius and spirit of the laws upon the subject of navigation and commerce. The question arose upon a general demurrer to the declaration. This declaration set out the bond, and the condition annexed; but it did not (so far as appears from the report of the case) set out the circumstances under which the bond was given, or any requirement by the collector that the bond should be given in the form adopted. After the argument on the part of the defendant had been concluded, Mr. Hay, the attorney of the United States, expressly admitted "that a condition in a bond taken by a public officer which was not authorized by the law which required the bond was void. and that no action could be maintained for the breach of such a condition." He also admitted that "if the laws referred to by the defendant's counsel were the only laws upon the subject, the argument which had been urged was unanswerable." He then asked time not only to examine the acts of congress upon the subject, but to consult with the officers of the customs in order to ascertain whether there was not some authority for taking a bond with the condition set out in the declaration. This being granted, the case was continued for several days. In the end Mr. Hay stated that he had not only made every examination into the subject he could, but had also applied to the officers of the customs for their aid in the research; that it had been in vain, .for no other laws could be found applicable to the case; that the position for which the defendant's counsel contended he could not deny, and he should therefore dismiss the

cause. The report states that this was done, and that at the same time several other causes instituted on similar bonds were also dismissed. It is true that there was no decision by the court in this case, but the distinguished character and the great legal learning and ability of Mr. Hay give to his deliberate opinions, thus expressed and thus acted upon. the force of a legal adjudication. It will, however, be observed that the question whether under the pleadings the bond ought to be considered as voluntarily given, or as having been illegally exacted, was not discussed; and that the case was apparently disposed of upon the conceded invalidity of the bond, upon the facts, as understood by the district attorney, irrespective of the form of the pleadings and without any discussion of the question whether if the bond had been voluntarily given it might have been enforced.

In 1811, in U. S. v. Morgan [supra], in an action upon an embargo bond, Mr. Justice Washington decided that a statutory bond which bound the obligors to do more than the law required, was not the bond which the officer was authorized to take, and was void. The question arose upon demurrer to the defendant's plea, but the facts alleged by it are not set forth, and the only reference to the question of the validity of a voluntary bond, or to the allegations of the plea bearing upon that question, is to be found in that part of Mr. Justice Washington's opinion in which he says: "The court will not say that if such a bond be voluntarily given, it would on that account be valid. But there is no ground for saying that the bond in question was voluntarily given. since the reverse is stated by the defendant, and admitted by the United States."

In the same year, in Dixon v. U. S. [supra], Mr. Chief Justice Marshall sustained a demurrer to a declaration upon an embargo bond. the condition of which imposed upon the obligors a liability beyond that required by statute. This was caused by inserting in the condition of the bond a clause not authorized by law. and by the omission (in the required condition for re-landing the goods in respect to which it was made in some port of the United States) of the words "dangers of the seas excepted," as provided in the statute. The particular circumstances under which the bond was executed do not appear to have been set forth in the declaration demurred to, and the question whether the bond was voluntarily given or illegally exacted does not appear to have been discussed. In delivering his opinion in respect to the validity of the bond in question, the chief justice said: "A clause is inserted in the condition not warranted by law. and an exception is made by the law which is not inserted in the condition. The bond, therefore, does not pursue the statute. The question is, whether the variance be such as to

avoid the bond as a statutory obligation? That the member of the condition not required by the statute cannot be permitted to prejudice the obligors is admitted by the attorney of the United States. But he contends that it cannot affect so much of the condition as pursues the statute. The plaintiffs in error insist that it vitiates the whole bond, because it makes the instrument a different one from that which the collector was authorized to demand. The cases adduced by neither party appear to me to decide the question, nor have I been able to find one that does. If a statute renders a bond void, which is taken for a particular object, and one be taken with a condition in part for this illegal object, and in part for other objects not illegal, it is clear law that the illegal part vitiates the whole instrument. It is also believed that if a bond be given at common law, when both the obligor and obligee are free agents, acting for themselves on an equal footing, and a part of the condition be void, but there is no statute annulling the bond on account of that condition, the instrument is valid as to so much as is lawful. But the case of a bond taken under a statute by an officer specially empowered to take it, and containing additional conditions not warranted by that statute, differs essentially from either of these cases. The general policy of the law must require that the statute should be pursued, and the nature of the case requires that the power should be executed conformable to the act creating it. If the form of the bond and condition were prescribed, there could be no doubt of the necessity of pursuing that form strictly and literally, but the form of the condition is not prescribed, and it must be sufficient that the bond conform substantially to the statute. But may the statute be exceeded? It would certainly be mischievous to allow officers to insert in the bonds they are empowered to require, conditions not warranted by law. Although courts and lawyers may know that such conditions have no effect, obligors may not know it, and this abuse of official power may very materially affect the interest of individuals, who may regulate their conduct on the opinion that they are bound to the full extent of the instrument they have executed. That in this particular case, the condition inserted may not be in hostility to the general views of the legislature, cannot materially vary the question, for it is not warranted by the statute; and if the officer be at liberty, under the color of office, to introduce such conditions as his own judgment may approve, then his judgment and not the statute becomes the director of his conduct. Yet it is going far to say, that, for the insertion of even a material condition not warranted by law, not only the unauthorized condition but the bond, in other respects lawful, becomes absolutely void. The question, if considered in a general point of view, is certainly not without

its difficulties. But there is a particular aspect belonging to the case itself which ought not to be entirely overlooked. It is said, that if this bond be void under the statute it is good at common law. That is, that if the statute had directed no bond, still judgment might be obtained on this obligation, as on a voluntary contract by which the obligors bind themselves not to do an act which the policy of the law prohibits. If this argument be correct, then these obligors are liable at common law, under this bond, for the breach of that part of the condition which is now under consideration. The third section of the first supplemental act— 2 Story's Laws, 1072 [2 Stat. 451]—subjects the vessel and cargo to forfeiture in the very case which this condition contemplates; and on the failure to seize them renders the owner or owners, agent, freighter, or factor, liable for the double value. This forfeiture is not secured by bond. If, then, for the fact of going to a foreign port, the obligors are liable at common law, under this bond, and are also liable under the statute, this circumstance seems to strengthen very much the reasons for requiring, that bonds taken under color of office should contain no condition not warranted by law. This condition is exceptionable in other respects; it omits the words 'dangers of the seas excepted.' Original act of December 22, 1807, § 2. The attorney for the United States admits that if these words be material, the omission is fatal. I should have been astonished had he not admitted it. * * * There is still another part of this bond, which, in my judgment, deserves consideration. The vessel is averred in the declaration to have been a registered vessel, and the court must understand this to be the fact. If a licensed vessel, that part of the condition which stipulates that the vessel shall not proceed to any foreign port or place conforms to the statute. It is consequently a material part of the condition which binds the obligors, unless they could be permitted to contradict their bond, and could be certain to find evidence to support their plea. These are difficulties to which the collector has no right under the statute to expose them. The obligors could escape the effect of this argument only by maintaining that the bond is void as a bond given by a coasting vessel because it does not appear to have been executed by the owner as well as the master. But the owner and master may be the same person. One court has already decided that this objection would not be valid, and I am not confident that other courts might not affirm the decision. If so, the condition which is introduced without the authority of law is a material one. But if these points could be decided against the defendant, it is, in my opinion, not for an officer taking a bond under a statute to exclude a condition prescribed by law, because, in his opinion, its insertion is useless. It is a point

on which the judgment of the officer is not to be exercised; and whether right or wrong, the effect will be the same. He is a ministerial officer, whose business it is to pursue the statute, and if he fails to do so the statute will not sanction his act. Although the operation of the bond should be the same, whether the condition prescribed by law be inserted or not, the law considers that condition as material, or it would not have been prescribed. The record, then, as it appears in this court, exhibits a bond not demandable under the statute from a registered vessel, which this is admitted to be, and a suit on such bond cannot be sustained under the statute. If, as is my present opinion, the whole penalty be recoverable in a suit on a statutory bond, yet it is not recoverable on a bond rendered valid only by the common law, and deriving aid from the statute. This is a contract said to be good at common law, and if it be, then being a contract made in Virginia, the United States could only recover according to the laws of Virginia the damage actually sustained. In the judicial act it is declared that in such cases the court shall give judgment only for so much as is equitable, which must, on the application of either party, be referred to a jury. But I am strongly inclined to the opinion that bonds taken to the government by one of its officers to prevent the commission of an act rendered culpable by statute, if not valid under the statute, cannot be supported at common law so as to recover damages. I can perceive no criterion by which damages may be ascertained. I am by no means clear in this opinion, but as the award of a writ of inquiry, with directions to consider the penalty as no guide to the jury in estimating damages, would be obviously a proceeding never contemplated by the law in these cases, I shall not award one, but shall sustain the demurrer."

In the case of U. S. v. Gordon [Case No. 15,232], decided by the chief justice during the same year, it was held on demurrer to the defendant's plea that an embargo bond exacted and taken in a penalty greater than that prescribed by the statute was void; the plea having alleged that the bond was taken for more than thrice the value of the vessel and cargo instead of twice their value as required by statute; and that the obligors were constrained to execute the bond by the collector to clear the vessel until the bond was executed. In the case of U. S. v. —— [supra], decided by the same learned judge, at the same term, it was held that the embargo bond declared on was void because the words "dangers of the seas excepted" were omitted in the condition, as they had been in the case of Dixon v. U. S., supra. It was nevertheless intimated that a statutory bond, which superadds a condition that the statute does not authorize, is not vitiated by the surplus matter, but that the court would reject the surplusage as a mere nul-

lity, and construe the bond as if such surplus matter was not contained in it. It is supposed, however, that this must be understood as referring to bonds voluntarily given.

In Armstrong v. U. S. [Case No. 549], decided the same year by Mr. Justice Washington, it was held that a bond given by a collector of internal revenue and his sureties under an act of congress ought to conform, in substance at least, to the requisitions of the statute, and that if it went beyond it was void, so far as it exceeded such requisitions. The question arose upon a bill in chancery to restrain the enforcement of a claim under that portion of the condition which was not required by the statute. Neither in this case, nor in that of Gordon, does it appear that the question of the validity of such bond, when voluntarily given, was discussed by the counsel or passed upon by the court.

In the case of U. S. v. Sawyer [Case No. 16,227], decided by Mr. Justice Story in 1812, the pleadings were informally and incorrectly drawn, and the case is only important as tending to maintain the position that in order to avoid a bond for being illegally taken colore officii, all the facts which show such illegality should be specially set up by the plea of the defendants, unless indeed they fully appear on the face of the declaration.

In the case of U. S. v. Maurice [supra], decided by Chief Justice Marshall in 1823, the action was brought on a bond, the condition of which recited that Maurice had been appointed an agent for fortifications, and then provided that he should "truly and faithfully execute and discharge all the duties appertaining to the said office of agent." It was held that Maurice had never been legally appointed to such office; that, therefore, the bond was not valid as a statutory official bond; that it might nevertheless be considered as an obligation to perform the duties appertaining to the office of agent of fortifications; that those duties were prescribed by the army regulations; and "an undertaking to perform the duties prescribed in a distinct contract or in a law, or in any known paper prescribing those duties, is equivalent to an enumeration of those duties in the body of the contract itself." There was no allegation that the bond was not voluntarily given, and it was held good as a common-law instrument voluntarily executed by the obligors. The chief justice in his opinion declared that the capacity of the United States to contract was co-extensive with the duties and powers of government; that every contract which subserved to the performance of a duty might be rightfully made; that a contract executed by an individual and received by the government was prima facie evidence that it was entered into between proper parties; and the authority of an agent or officer of the government employed in making the con-

tract, is acknowledged by the individual when he makes the contract, and by the United States when the government asserts any rights under it.

In the case of U. S. v. Howell [Case No. 15,405], decided in 1826, Mr. Justice Washington expressed the opinion "that when a statute requires an official bond to be taken, and prescribes substantially the terms of it, it must conform to the requisitions of the statute, and if it goes beyond them it is void so far at least as it exceeds those requisitions;" but he added, "I have no doubt that the officers of the government may legally take bonds or other securities for debts due to the United States, although no act of congress authorizes their being taken in the particular case."

In U. S. v. Brown [Case No. 14,663], decided by Judge Hopkinson, 1831, the question "whether if the condition of a statutory bond contains more than is required by the statute the bond is wholly void," was very elaborately and ably discussed. The suit was brought upon a bond executed by a collector of direct taxes and his sureties. The statute directed that the collector should give a bond with sureties "for the true and faithful discharge of the duties of his office according to law, and particularly for the due collections and payments of all moneys assessed, etc.," and the condition of his bond as given was that "the said Nicholas Kern" (the collector) "has truly discharged, and shall continue truly and faithfully to discharge the duties of his said office." The objection to the bond was that it had a retrospective operation while the bond directed by the statute had not; and Judge Hopkinson stated that the question to be decided was not whether they could give to the bond a retrospective effect, as that was not pretended on the part of the plaintiffs, but whether by this departure from the statute the obligation was entirely void. It was not alleged by the defendant's plea that a bond containing that portion of the condition which was intended to give it a retrospective operation was required of the collector, by any other officer or any department of the United States. In deciding the question presented, Judge Hopkinson examined and at considerable length discussed the purport and effect of several prior decisions. The case under consideration was compared with the case of U. S. v. Morgan, supra, and, after declaring that there was an important difference between them, Judge Hopkinson said: "The condition of that bond was not, as ours is, in its nature or terms divisible. There was not in it a part which was bad, and a part which was good, and so set forth that they might be separated from each other; that the one might be retained and the other rejected; that the obligation might stand good for the one and not for the other; that the United States might say on the record, we ask for a judgment only on so much of this condition and its forfeiture as

is according to law. It is impossible to make the bond in Morgan's Case conform to the law by taking away any part of it. You must make altogether a new and a different condition; you must add an important qualification or exception given by the act of congress and not given by the bond, and must essentially change, indeed expunge, another part of the condition which was not warranted by the law. In short, you must make a new contract between the parties. It was a very plain case, and this may account for the little attention that was given to the argument." In referring to the case of U. S. v. Hipkin, supra, Judge Hopkinson said: "No opinion was given by the court, nor was any necessary. The objection to the bond was that the condition was contrary to the express provisions of the law. It was not a case of a condition with several stipulations divisible from each other, some according to law and others not so. The district attorney admitted that no recovery could be had for a breach of a condition that was not authorized by the law which required the bond." The bond in Brown's Case was held by Judge Hopkinson to be binding to the extent of the condition directed by the statute, the learned judge stating in conclusion that the good part of the condition might be easily separated from the bad; that nothing was required to be added to the contract, and nothing to be taken from it, but what is favorable to the obligor, by diminishing the extent of his liability.

The cases thus far considered have been cases decided by judges of the district or circuit courts of the United States; but three cases decided by the court of last resort will now be referred to.

The first of these (U. S. v. Tingey, 5 Pet. [30 U. S.] 115) was decided in 1831. The suit was upon the bond of a purser of the navy and his sureties. The statute required that the official bond of a purser should be "conditioned faithfully to perform all the duties of purser of the navy of the United States;" while the bond actually given, instead of limiting the liability of the obligors to the duties or disbursements of the purser as such, made them liable for all moneys received by him, and for all public property committed to his care whether officially or otherwise. In this difference between the actual condition of the bond and that required by the statute, the case was not very unlike that now under consideration; but the pleadings in the two cases are widely different. In that case the defendant by special plea alleged that the navy department caused the bond to be prepared and transmitted to the purser, and required and demanded that the same should be executed by him, with sufficient sureties, before he should be permitted to remain in the office of purser or to receive the pay and emoluments attached to his office; and "that the same was under color and pretence of the said act of congress, and under color of

office, required and extorted" from the purser and his sureties. On demurrer to this plea judgment was given against the United States. Referring to these allegations of the plea, Mr. Justice Story, who delivered the opinion of the court, said: "There is no pretence then to say that it was a bond voluntarily given, or that though different from the form prescribed by the statute, it was received and executed without objection. It was demanded of the party, upon the peril of losing his office; it was extorted under color of office, against the requisitions of the statute. It was plainly then an illegal bond, for no officer of the government has a right, by color of his office, to require of any subordinate officer, as a condition of holding office, that he should execute a bond with a condition different from that prescribed by law. That would be not to execute, but to supersede the requisitions of law. It would be very different when such a bond was, by mistake or otherwise, voluntarily substituted by the parties for the statute bond without any coercion or extortion by color of office." The capacity of the United States to enter into a contract or take a bond, in cases not previously provided for by law, whenever it was proper to do so in the exercise of the constitutional powers confided to the government, was expressly affirmed, and it was declared that the government, through the instrumentality of the proper department to which its powers are confided, might enter into contracts appropriate to the just exercise of such powers, and not prohibited by law.

In the case of U. S. v. Bradley, 10 Pet. [35 U. S.] 343, decided in 1836, the suit was upon a bond taken from a paymaster in the army and his sureties, and it was contended that the bond was void because the condition did not cover all the responsibilities required by the statute to be covered by the paymaster's official bond, and also because it imposed other responsibilities not required by the statute. The defendant's plea did not allege that the bond was extorted or required; but it was insisted that a bond void when required contrary to a statute (referring to Tingey's Case) was equally void when taken contrary to such statute. And the defendant's counsel also strongly resisted the claim on the part of the United States that the bond was good because voluntarily given, and that it was at least good so far as it conformed to the statute, even if void for the residue. Mr. Justice Story, in delivering the opinion of the court, again declared that a voluntary bond taken by the United States for a lawful purpose, but not prescribed by law, was valid. And he also declared that upon the face of the pleadings the bond must be taken to be a bond voluntarily given, there being no averment that it was obtained by extortion or oppression, under color of office, as there was in Tingey's Case. He further said: "It has been urged, however, in the present case, that the act of

1816, c. 69 [3 Stat. 297], does, by necessary implication, prohibit the taking of any bonds from paymasters, other than those in the form prescribed by the sixth section of the act, and therefore that bonds taken in any other form are utterly void. We do not think so. The act merely prescribes the form and purport of the bond to be taken of paymasters by the war department. It is in this respect directory to that department; and doubtless it would be illegal for that department to insist upon a bond containing other provisions and conditions differing from those prescribed or required by law. But the act has nowhere declared that all other bonds not taken in the prescribed form shall be utterly void; nor does such an implication arise from any of the terms contained in the act, or from any principles of public policy which it is designed to promote. A bond may, by mutual mistake or accident, and wholly without design, be taken in a form not prescribed by the act. It would be a very mischievous interpretation of the act to suppose that under such circumstances it was the intendment of the act that the bond should be utterly void. Nothing, we think, but very strong and express language, should induce a court of justice to adopt such an interpretation. Where the act speaks out, it would be our duty to follow it; where it is silent, it is a sufficient compliance with the policy of the act to declare the bond void as to any conditions which are imposed upon a party beyond what the law requires. This is not only the dictate of the common law, but of common sense. We think then that the present bond, so far as it is in conformity to the act of 1816, c. 69, is good; and for any excess beyond that act, if there be any (on which we do not decide), it is void pro tanto. The breach assigned is clearly of a part of the condition (viz., to account for the public moneys) which is in conformity to the act; and therefore action is well maintainable therefor."

In U. S. v. Linn, 15 Pet. [40 U. S.] 290, decided in 1841, it was held that an obligation, not under seal, voluntarily given by a receiver of public moneys and his sureties as security for the faithful performance of his duties as such receiver, was valid, although the act of congress directed that he should give a bond with approved security. The court again decided that a voluntary contract or security, taken by the United States for a lawful purpose and upon a good consideration, although not prescribed by any law, is not void. And the validity of such voluntary contracts was again affirmed in Tyler v. Hand, 7 How. [48 U. S.] 573, decided in 1849.

Prior to the decision of the two cases last referred to, in 1839, the case of Tabor v. U. S. [Case No. 13,722], was decided in the circuit court by Mr. Justice Story, upon a statement of facts agreed by the parties, and an agreement that if the defendants were not required by law to execute the bond in question in order to enable the ship therein mentioned to proceed on her voyage, judgment should be

entered for the defendants. This was then the only question, and it was held that they were not. Mr. Justice Story, in disposing of the case, said: "I am of the opinion that no action can be maintained on the present bond, as it seeks to enforce a supposed statute duty, and is in the nature of a penalty, and has been exacted by the officers of the government under a mistake, as well of their duty as of law." The bond had been taken by the collector as a bond required by statute, in a case not within its provisions; but the statement of facts agreed upon does not contain an admission that it was extorted or exacted, although it may justify the inference that it was required by the collector.

The cases above referred to, and others not cited, are sufficient to sustain the conclusion before stated, that the bond declared on in this suit if illegally exacted from the principal therein, as a condition precedent to the issuing of a distiller's license, is wholly void, but there being nothing in the pleadings to show that the bond was illegally exacted, or that it was not prepared, executed, and delivered without any previous requirement of the collector, it must, under the authority of the case of U. S. v. Bradley, supra, be held to have been voluntarily given. The cases above cited also show that a bond voluntarily given to the United States to secure the performance of any lawful act or the discharge of any legal duty is valid, if the United States, in its political and corporate capacity, has a legal pecuniary interest in the performance of the condition of the bond, although such bond is not required by any act of congress; and that a bond executed by a public officer or private individual, and his sureties, of their own free will, without any exaction or requirement on the part of the officer or agent taking the same on behalf of the government, and purporting to impose obligations not required by any statute, as well as obligations so required, is not wholly void, simply because it was erroneously supposed to be required, and was given, taken, and accepted as a bond required by an act of congress. It is true that the language of some of the earlier cases would seem to lead to a different conclusion, but in the more recent cases it is held that where the different obligations can be separated, the one from the other, the obligations in excess of the statute requirement may be rejected as surplusage, and the bond enforced to the extent of the obligations required by the statute. If the obligation in excess of the requirements of the statute thus voluntarily assumed would be held to be binding if not connected with the obligation directed to be taken by the statute, it might, in the absence of the cases deciding the question, be considered extremely doubtful whether an obligation, which, if standing alone, would be lawful and valid, should be held unlawful and void, merely because it was contained in the same instrument with another entirely lawful and valid obligation which

happened to be required or provided for by statute. But at this time and in this court, the question must be considered as one of authority; and it is believed that the cases which hold such bonds to be good to the extent of the obligations required by statute, and void as to the excess, are so numerous and so authoritative that they must be followed in this court, until overruled by the court of last resort. And when, as in this case, the precise form and extent of the statutory obligation to be imposed is distinctly and exactly prescribed by statute, it must be conceded that there is much reason for saying that a bond which imposes other and very different obligations is against the policy of the statute and the intentions of the legislature; and that all obligations in excess of such statutory requirements, found in any such statutory bond, are therefore void. Assuming, then, that a bond voluntarily given as a statutory bond, but purporting to impose obligations in addition to those required by statute, may be good in part and void in part, as above stated, it becomes necessary to determine whether the bond declared on in this case is to be considered as a bond of that character, and whether, under the declaration, the United States are entitled to recover. The recital in the condition of the bond, and the statements made in assigning breaches of its condition, are deemed sufficient (independent of the admissions made upon the argument) to justify the assumption that this bond was executed and taken as and for the bond of a distiller under the act of 1862. Indeed there is nothing in the declaration to show that the United States had any other reason for taking the bond or have now any interest in enforcing its obligations, except as against the principal obligor as a distiller.

In this view of the case it is necessary to consider whether, under the cases cited, the United States can have judgment upon the ground that the bond declared on may be enforced in respect to a portion of its condition, although other portions of such condition, which are in excess of the condition authorized by statute, are illegal and void. And this depends upon the question whether the portions of such condition which are in excess of the statutory requirement are so separable from the other portions of the condition of the bond that they may be rejected as surplusage, and the residue of the condition then be of such tenor and effect as to allow a recovery upon the breaches assigned. It will be seen by the extract which has been made from the opinion of Mr. Justice Curtis, in the case of Hawes v. Marchant, that it was said by that learned judge that the cases in which it has been held that if the condition of a statutory bond contains stipulations which are not required by the statute, but separable from those which are required, the latter may be enforced and the former rejected, require that the one should be separable from the other; and that in the case of a voluntary bond the

question "whether it can be enforced or not, depends upon the possibility of separating the parts of the condition authorized and required from the residue of the condition, when the condition is not wholly in conformity with the law, and this is the only objection to the bond." And this statement is fully sustained by other cases. Where there is no doubt in regard to the interpretation or construction of the language of the obligation, this separation is to be made, not by arbitrarily restricting the effect of the language of such obligations, but by rejecting as surplusage whatever is unauthorized; thus reading and construing the writing as though such surplusage was stricken out. As was said in substance by Judge Hopkins in U. S. v. Brown, supra, there must be a part which is good and a part which is bad, so set forth that they may be separated from each other and one retained and the other rejected. Courts cannot make a new and different condition or contract, but may reject as surplusage any separate or separable words or sentences which have been improperly introduced. Thus in the present case there is no difficulty in rejecting as surplusage the words, "and of such other act or acts as are now or may hereafter be in that behalf enacted," but the difficulty is in going further. It is impossible to make the bond conform to the statutory requirement by striking out any part of the remaining condition which requires that "Jane Goodwin shall truly and faithfully conform to all the provisions of the act of 1862." In order to give such effect to the condition much more would be required. The provisions of that act relating to income returns, and to manufacturer's returns, to the payment of income and other taxes and duties, and to the affixing of stamps, are all in terms and effect covered by this condition, as much as the provisions of the 39th section under which a distiller's bond is required, and in order to make the bond conform to the statute an entirely new condition must be made. In short, the good and bad parts of this condition are not separable, and the bond cannot be made to conform to the statute in the only mode in which common law courts are authorized to reform such contracts. The bond must therefore be held to be wholly void. See Hawes v. Marchant, decided by Judge Curtis, and U. S. v. Brown, decided by Judge Hopkinson, hereinbefore referred to, and the cases there cited, and Lee v. Coleshill, Cro. Eliz. 529, and Chater v. Beckett, 7 Term R. 201.

But even if the bond in this case could be held to be good and valid to the extent of the obligations imposed by a bond properly executed and properly taken under the 39th section of the act of 1862, and with the condition therein specified, there would still remain another question of great importance which was not discussed on the argument, but in respect to which little doubt can be entertained. It is supposed that the only ground upon which the United States would be entitled to recover

more than nominal damages, under the breaches assigned in the declaration, is the non-payment of the duties legally due upon the spirits distilled by the principal in the bond; and the 39th section of the act of 1862, in prescribing the condition of the distiller's bond, intended to secure such payment, provides only for the payment of "the duties by this" (that) "act imposed" on the spirits so distilled. Now the act of 1862 imposed a duty of twenty cents a gallon only, and it was not until the passage of the act of March 3, 1864, that this duty was increased; by that act the duty on such spirits subsequently distilled and sold, or distilled and removed for consumption previous to the 1st day of July then next, was increased to sixty cents the gallon. The declaration alleges that Jane Goodwin continued to be a distiller to and including the 5th day of May, 1864, that is, for two months after the duty was increased to sixty cents by the act of 1864; and that she distilled up to and including said 5th day of May, 1864, 489,756 76-100 gallons of spirits, upon which there was due for duties and taxes under the several acts of congress the sum of $122,-744.82; and it then admits the payment of $106,708.76, or nearly $10,000 more than a tax of 20 cents per gallon upon such distilled spirits would have amounted to; and there is nothing to show that any of the unpaid taxes were imposed in the act of 1862. It would seem then that under this state of the pleadings nothing beyond nominal damages could be recovered upon this bond, even if it should be held to be valid to the extent of the obligation required to be assumed by the distiller and her sureties in the bond required to be executed under the 39th section of the act of 1862. But this question relates rather to the amount of damages than to the bare right to recover at least nominal damages; and, therefore, it has been necessary to examine other and more embarrassing questions. The defendants are entitled to judgment upon the demurrer, but the plaintiffs will be allowed to amend their declaration.

[There was a difference of opinion between Judge Hall and Judge Woodruff, in consequence of which the case was certified to the supreme court. The opinion of Judge Hall above was reversed. 154 U. S. 580, 14 Sup. Ct. 1213. For opinion of Judge Woodruff, see Case No. 15,-851.]